492 So.2d 959 (1986)
Doug MERCHANT
v.
BOARD OF TRUSTEES OF THE PEARL MUNICIPAL SEPARATE SCHOOL DISTRICT.
No. 56310.
Supreme Court of Mississippi.
July 23, 1986.
*960 Michael P. Younger, Johnston & Younger, Brandon, for appellant.
James H. Gabriel, Arthur F. Jernigan, Jr., Bacon, Jernigan & Martin, Jackson, for appellee.
Before ROY NOBLE LEE, P.J., and PRATHER and ROBERTSON, JJ.
ROBERTSON, Justice, for the Court:

I.
Our law directs that the trustees or board members of the various public school districts of this state serve in a quasi judicial capacity with respect to a wide range of personnel matters including teacher dismissals. For reasons of institutional necessity and practical convenience, we have long accepted substantial limitations upon judicial review of a school board's actions. Adherence to these limitations proceeds on the assumption that there has been a full and fair hearing before the school board followed by a reasonable and adequate decision on the merits of the matter in controversy. It is in the context of these premises that we this day affirm the Pearl Municipal Separate School District's dismissal of an obviously popular and successful football coach, because he refused to be a team player.

II.
Prior to July of 1984 Doug Merchant, Appellant here, served as athletic director for the Pearl Municipal Separate School District (PMSSD) and head football coach at Pearl High School. On July 10, 1984, Merchant was notified by District Superintendent, William H. Dodson, that his contract was terminated and he was dismissed from further duties. An amended notice of dismissal advised Merchant that the reasons for his dismissal were (1) insubordination, (2) direct disobedience of School Board policy concerning purchasing after receiving written instructions concerning said policy, (3) overspending the Athletic Department's budget, (4) purchasing or contracting to purchase items over $500.00 *961 without receiving price quotations, (5) unauthorized sale of merchandise to students, including shirts, jackets, cokes and other items, and (6) failure to account for monies received to the school activity fund.
As required by law, Merchant was advised of his entitlement to a hearing before the School Board regarding his termination and the adequacy of the reasons therefor. Miss. Code Ann. § 37-9-59 (Supp. 1985). Merchant requested such a hearing which in fact was held on July 23, 1984. We have before us a transcript of that hearing, the better part of which consists of the testimony of Superintendent Dodson by way of explanation and justification for Merchant's dismissal, followed by Merchant's testimony by way of defense. At the conclusion of the hearing the School Board upheld the action of the Superintendent, effectively terminating Merchant from further employment with the District.
Merchant perfected an appeal to the Chancery Court of Rankin County, Mississippi. In an opinion filed January 4, 1985, the Chancery Court affirmed the action of the school trustees. That opinion noted Merchant had been dismissed on July 23, 1984, that he raised constitutional questions regarding adequacy of notice of certain allegations but that the proceedings before the school trustees conformed to law and
that the action of the Board of Trustees of the Pearl Municipal Separate School District should be affirmed and the petition for appeal and review filed herein by the Petitioner, Doug Merchant, should be dismissed.
On January 14, 1985, the Chancery Court entered its final order dismissing Merchant's appeal, whereupon Merchant perfected a further appeal to this Court. See Miss. Code Ann. § 37-9-59 (Supp. 1985).

III.
Our law provides that any employee of a school district may be dismissed or suspended for incompetence, neglect of duty, immoral conduct, intemperance, brutal treatment of a pupil or for other good cause. Miss. Code Ann. § 37-9-59 (Supp. 1985); see Everett v. Board of Trustees of Meridian Municipal Separate School District, 492 So.2d 277 (Miss. 1986). This Court has recognized that insubordination is one of the "other good causes" for which one may be dismissed. Noxubee County Board of Education v. Givens, 481 So.2d 816, 819 (Miss. 1985); Sims v. Board of Trustees of Holly Springs Municipal Separate School District, 414 So.2d 431, 435 (Miss. 1982).
Without serious question, one who is a school district athletic director or a high school football coach, is subject to the provisions of Section 37-9-59, even though those two jobs are not specifically listed by title. See Everett v. Board of Trustees of Meridian Municipal Separate School District, 492 So.2d 277 (Miss. 1986).
The hearing procedure in such cases is that found in Miss. Code Ann. § 37-9-111 (Supp. 1985). See Miss. Code Ann. 37-9-59 (Supp. 1985). Section 37-9-111(4) provides, inter alia, that at the conclusion of the hearing the school board
shall notify the employee in writing of its final decision and reasons therefor.
Appeals may then be taken in accordance with Miss. Code Ann. § 37-9-113 with respect to which judicial review
shall be limited to a review of the record made before the school board or hearing officer to determine if the action of the school board is unlawful for the reason there was:
(a) not supported by any substantial evidence;
(b) arbitrary or capricious; or
(c) in violation of some statutory or constitutional right of the employee.
At such hearing before the school board, the burden rests upon the superintendent to prove by a preponderance of the evidence adequate grounds for dismissal (or such other action as the superintendent proposes to take). Mississippi Employment Security Commission v. Philadelphia Municipal Separate School District, 437 So.2d 388, 393 fn. 4 (Miss. 1983); Sims *962 v. Board of Trustees of Holly Springs Municipal Separate School District, 414 So.2d 431, 434 (Miss. 1982).
What happens on appeal is familiar to all. This Court accords great weight and deference to the prerogatives of school administrators when their discharge of their responsibilities is challenged. See Clinton Municipal Separate School District v. Byrd, 477 So.2d 237, 240-42 (Miss. 1985); Brantley v. Surles, 404 So.2d 1013, 1018 (Miss. 1981). With regard to the facts of the case  both the evidentiary facts and the ultimate facts  our inquiry is limited to a determination of whether there be substantial credible evidence undergirding the School Board's findings. If there be such evidence, we have no authority to do other than recognize and act upon those findings of fact. Everett v. Board of Trustees of Meridian Municipal Separate School District, 492 So.2d 277 (Miss. 1986); Noxubee County Board of Education v. Givens, 481 So.2d 816, 819 (Miss. 1985); Hattiesburg Municipal Separate School District v. Gates, 461 So.2d 730, 738 (Miss. 1985); Brantley v. Surles, 404 So.2d 1013, 1018 (Miss. 1981). To be sure, where a school board has acted in a manner which is arbitrary and capricious and where its actions are not supported by substantial evidence, the chancery court and ultimately this Court have the responsibility to intervene. Noxubee County Board of Education v. Givens, 481 So.2d 816, 819-20 (Miss. 1985); Madison County Board of Education v. Miles, 252 Miss. 711, 173 So.2d 425 (1965). Such cases are rare, as they ought to be.

IV.
The foregoing premises in mind, we will review the findings of the School Board.
The Board first found that Merchant had "failed to follow the published purchasing policy and procedure of the district". Evidence was presented to the Board of at least eleven occasions when Merchant made purchases without prior purchase order authorization. As early as June 14, 1983, the Board and its Superintendent had advised Merchant of his violations of the purchase order policy and that any such future conduct could "jeopardiz[e] ... your employment". The violations continued and on December 15, 1983, Superintendent Dodson issued a written reprimand citing Merchant's "failure to obtain the Superintendent's signature on purchase orders [totaling $5,457.04] prior to purchase" as well for exceeding the athletic department's budget for the year. Four more purchase order irregularities were documented for the spring of 1984: (1) a $52.51 equipment purchase on March 28, 1984, without a purchase order, (2) equipment purchased on April 6, 1984, for $100.77 in excess of the authorization on the purchase order, (3) weight lifting equipment purchased on April 22, 1984, for $947.70 in excess of the authorization on the purchase order, and (4) a $99.00 overage on a May 29, 1984, purchase order.
The Board further found that Merchant had "violated the published policies and procedures of the district concerning the collection and accounting of monies from unauthorized sales of `Panama Jack' style tee shirts and Coca-Colas." It seems that in the fall of 1983, Merchant, without prior authorization, had had football players sell the Panama Jack type shirts even when authorized school policy required deposit of any receipts from such sales into the activity fund, which Merchant likewise failed to do. The shirt sales project was unknown to Superintendent Dodson until May of 1984. A student scheduled to graduate the next night had not paid Merchant monies said to be owed arising out of the shirt sales and had been advised he could not graduate until he paid up.
About this time an unpaid bill owing to Coca Cola Bottling Company came to Dodson's attention and led to the discovery that Merchant had an unauthorized coke machine in the athletic field house whose proceeds again were not being deposited to the activity fund.
The Board further found that Merchant "had failed to account for monies belonging to the system by selling football jerseys *963 to senior members of the team without authority and without turning the money into the district". Merchant admitted doing this.
Beyond these matters the Board found Merchant "insubordinate" toward Superintendent Dodson and the Board. The Board's findings emphasize Merchant's efforts to circumvent and undercut the authority of the Superintendent and School Board by taking his grievances to the Mayor and Board of Aldermen and citizens of Pearl at large. In its findings the Board advised that it could "not allow a member of its staff to flaunt its authority or the authority of the Superintendent".
In its brief before this Court, the Board offers an additional theory of Merchant's insubordination: his refusal to comply with published school policies regarding purchasing and finances, particularly the persistent violations of the purchase order policy after having twice been reprimanded by Superintendent Dodson. The evidence regarding these matters has been noted above.
There is a further dimension to the insubordination point. Merchant was not ordinary school teacher. He was PMSSD's athletic director and high school football coach. Beyond his formal employment assignment, Merchant was obviously a popular and influential person within the community, no doubt in part due to the competitive successes of the Pearl High athletic teams. He possessed a capacity to undermine the authority of the Superintendent and the School Board far beyond that of almost all other district employees. For this reason the Superintendent and the School Board had broad discretionary authority to act decisively to assure the orderly operation of the District's educational programs.
Considering in the aggregate the matters outlined above, together with the evidence which undergirds them, we have no authority to reverse. No objective observer could doubt that there was before the School Board substantial credible evidence suggesting the correctness of each finding. Nor could an objective observer dispute that the Board, considering these findings in the aggregate, could reasonably have concluded that incompetence, neglect of duty and insubordination justifying dismissal within Miss. Code Ann. § 37-9-59 (Supp. 1985).

V.
Merchant argues strenuously that the contract under which he was serving had commenced July 1, 1984 and that evidence of occurrences prior to that date could not be considered. Pre-July 1 acts, he says, had been either ratified or forgiven.
The record reflects that on July 5 and 9, 1984, Merchant made substantial threats to undermine and circumvent the authority of Superintendent Dodson and the School Board. Leaving aside the question whether these actions alone may have justified dismissal  coming as they did from one holding a position as high as athletic director and head high school football coach, Merchant's argument is twice flawed.
First, we consider the operative date mid-March of 1984, when Superintendent Dodson was by practical necessity required to decide whether he would recommend employment of Merchant for another year. At the latest it was April 8, 1984, the Board's deadline for advising Merchant of his non-reemployment after which it became obligated to tender him a contract for the upcoming school year. See Miss. Code Ann. § 37-9-105(c) (Supp. 1985). It was not until May, 1984, that Superintendent Dodson discovered the Panama Jack shirt sales scheme, the coke machine and the further purchase order violations. Notwithstanding because Merchant was not notified of non-reemployment before that date, Dodson was obligated to tender him a new contract effective July 1, 1984. See Noxubee County School Board v. Cannon, 485 So.2d 302, 304 (Miss. 1986).
Further, Merchant's offending conduct  taking as we must the Superintendent and Board's view of such  was continuing in *964 nature. The violations discovered in May and June of 1984 were sufficiently like what had gone before that it would have been irrational for the Board to have ignored the past. Cf. Jackson v. Hazlehurst Municipal Separate School District, 427 So.2d 134 (Miss. 1983).
Without doubt school authorities might place too great emphasis upon "past conduct", so that subsequent judicial scrutiny might prove convincing of an arbitrary and capricious dismissal unsupported by substantial evidence. Common sense and experience inform us that teacher dismissals generally are and ought be the product of a course of conduct continuing over a long period of time. See Sims v. Board of Trustees of Holly Springs Municipal Separate School District, 414 So.2d 431, 434 (Miss. 1982). The presence of offenses committed well prior to the contract period in issue are often the rule, not the exception. See Everett v. Board of Trustees of Meridian Municipal Separate School District, 492 So.2d 277, 282 (Miss. 1986). Repeated offenses, particularly if after warning, call for more severe sanctions in many contexts. See Miss. Code Ann. §§ 99-19-81 and -83 (Supp. 1985).
Moreover, the School Board and Superintendent may not be charged with condoning or waiving their duty to proceed upon teacher conduct of which they were not aware. Superintendent Dodson  and subsequently the School Board  were well within their prerogatives in July of 1984 to dismiss Merchant upon the combined basis of Merchant's purchasing irregularities in the Spring of 1984, the shirt sales and coke machine matters only learned of in May 1984, Merchant's clear insubordination in early July of 1984  all in the context of their aggregate experiences with Merchant over the preceding two years. Merchant's dismissal was neither unsupported by substantial evidence, nor was it arbitrary or capricious. See Miss. Code Ann. § 37-9-113 (1972).

VI.
Merchant argues that PMSSD effected his termination in a manner violative of his right to due process of law. See McDonald v. Mims, 577 F.2d 951 (5th Cir.1978); Miss. Code Ann. § 37-9-113(3)(c) (Supp. 1985). He suggests that testimony was adduced at the School Board hearing beyond the scope of the notice he had been given, to-wit: evidence of Merchant's "moonlighting" in other jobs and selling game jerseys to senior football players.
The quick answer to the moonlighting point is that the School Board in no way grounded its decision of dismissal on any such evidence. When hearing teacher dismissal matters, school boards proceed informally and are not bound by the Mississippi Rules of Evidence. School boards are not "courts". Rules 101 and 101(a), Miss. R.Ev.; see also Noxubee County Board of Education v. Givens, 481 So.2d 816, 820 (Miss. 1985). Generally, we will not reverse for introduction of evidence outside the scope of the charges against the teacher where it does not appear that such evidence substantially influenced the school board's decision.
Second, we find that Merchant was notified on July 11, 1984, that he was charged with "the unauthorized sale of merchandise, including shirts, jackets, cokes and other items, to and by students, ... ." This is broad enough to encompass selling or giving football jerseys to senior team members without authorization. In any event, the point seems to have been minor and without major effect on the School Board's termination decision.
AFFIRMED.
WALKER, C.J., ROY NOBLE LEE and HAWKINS, P.JJ., and DAN M. LEE, PRATHER, SULLIVAN, ANDERSON and GRIFFIN, JJ., concur.